# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL P. O'NEIL and NICOLA GRASSO <br><br> Plaintiffs, <br><br> v. <br><br> PETER F. NERONHA, in his Official Capacity as Attorney General of Rhode Island and COLONEL JAMES M. MANNI, in his Official Capacity as the Superintendent of the Rhode Island State Police <br><br> Defendants. | Civil Action No. 1:19-cv-00612-WES-PAS |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

I.  Introduction

Plaintiffs move this Court for summary judgement in their challenge to the State of Rhode Island's ban on the possession of electric arms. Plaintiff O'Neil wishes to purchase a "stun gun or Taser Pules for self-defense" and would "acquire, possess, carry and where appropriate use a Taser or stun gun to protect [himself, his home and his family]." [Docket No. 1-1, Declaration of Michael P. O'Neil]. Plaintiff Grasso wishes to purchase a "stun gun or Taser Pules for self-defense" and would "acquire, possess, carry and where appropriate use a Taser or stun gun to protect [himself, his home and his family]." [Docket No. 1-2, Declaration of Nicola Grasso]. Both Plaintiffs have not purchased an electric arm due to fear of prosecution for possessing and carrying an electric arm because Rhode Island bans these devices. *See* Docket Nos. 1-1, 1-2. Likewise, neither Plaintiff is a prohibited person. *Id.*

R.I. Gen. Laws § 11-47-42(a)(1) provides that: "[n]o person shall carry or possess or attempt to use against another any instrument or weapon of the kind commonly known as a blackjack, slingshot, billy, sandclub, sandbag, metal knuckles, slap glove, bludgeon, stun-gun, or the so called "Kung-Fu" weapons." This provision provides that "[a]ny person violating the provisions of these subsections shall be punished by a fine of not more than one thousand dollars ($ 1,000) or by imprisonment for not more than one year, or both, and the weapon so found shall be confiscated." *Id*. This prohibition must also apply to Tasers as a form of electric arms because a Taser can be used as a stun gun without deploying its probes in drive-stun mode.

Defendants claim that a Taser is not a stun gun and correctly state that R.I. Gen. Laws § 11-47-42(a)(1) makes no reference to "Tasers". *See* Defs'. Resp. to Judgment on the Pleadings, p. 8 [Docket 18]. The Defendants appear to claim that Tasers are not banned in the State of Rhode Island when they make these claims. However, as Defendants must and do admit, a Taser has a feature called "drive stun" which allows it to operate exactly like a stun gun[1], meaning that a Taser must also be a stun gun. While a Taser is also <u>more</u> than a stun gun, it cannot be seriously denied that it is also a stun gun and thus still banned in Rhode Island by the same statute that bans stun guns.[2,3]

---

[1] *See* Response to Interrogatory No. 5: "Although a TASER also has a secondary "Drive Stun" mode, similarly in function to a stun gun, because it can propel projectiles it is a much more complex weapon than a stun gun." Exhibit "A".

[2] A Rhode Island District Court used the terms "Taser" and "stun gun" interchangeably which suggests that if a Taser was not banned, then it could not have used the terms as synonyms because one would be illegal and one would not: "Rhode Island law states that 'No person shall carry or possess or attempt to use against another any instrument or weapon of the kind commonly known as a blackjack, slingshot, billy, sandclub, sandbag, metal knuckles, slap glove, bludgeon, stun-gun, or the so called 'Kung-Fu' weapons.' R.I. Gen. Laws § 11-47-42. The record references a taser, another name for a stun-gun. The Court will use the terms stun-gun and taser interchangeably." *Bellisle v. Landmark Med. Ctr.*, 207 F. Supp. 3d 153, 159 n.1 (D.R.I. 2016).

[3] It should also be noted that in line with Defendants' suggestion that a Taser is not a stun gun and perhaps not banned, they refused to explain themselves when asked how an individual can purchase a Taser and whether they considered a Taser to be a pistol or revolver. *See* Exhibit "A", Response to Interrogatory No. 17.

2

**STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[]'… Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 38 (1st Cir. 2007) (citation omitted).

II.     Electric Arms Are Protected by the Second Amendment

The Second Amendment protects bearable arms "commonly possessed by law-abiding citizens for lawful purposes". *See Fyock v. City of Sunnyvale*, 779 F.3d 991, 998, 2015 U.S. App. LEXIS 3471, *16. "That the proscribed weapons were not in existence, let alone in common use, at the time of ratification, does not end the matter. *Heller* left no doubt that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. at 582. *Worman v. Healey*, 922 F.3d 26, 34, 2019 U.S. App. LEXIS 12588, *13.  "[T]he question is whether the proscribed weapons are in common use for lawful purposes like self-defense." *Id* at *15. Forty-eight (48) states currently allow electric arms possession.  Post-*District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago,* 561 U.S. 742 (2010), Rhode Island's ban cannot withstand constitutional muster. Concurring in the *per curiam* reversal of the Massachusetts Supreme Judicial Court's upholding of a ban on stun guns, Justice Alito stated, "While less popular than handguns, stun

3

guns are widely owned and accepted as a legitimate means of self-defence across the country." *Caetano v. Massachusetts*, 136 S. Ct. 1027 (March 21, 2016) (Alito, J., concurring).

Three (3) states already have had their electric arm bans enjoined by court order[4]. This is because as established by multiple cases and the legal arguments made below, electric arms are "in common use today" for the "lawful purpose" of self-defense. Thus, they are protected by the Second Amendment. Further, under any of the applicable tests this Court may apply, Rhode Island's ban cannot survive constitutional muster.

### A. Electric Weapons Are Arms.

"[A]rms" refer to "weapons of offence, or armour of defence," or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," *District of Columbia v Heller*, 554 US 570; 128 S Ct 2783; 171 L Ed 2d 637, 647 (2008) (quotation marks and citations omitted). The electric arms at issue here fit with in that definition because they are designed to be borne by a single person to be used to attack or defend himself against others. They are "arms" because they are bearable weapons. Thus, there is a presumption electric arms are protected by the Second Amendment.

### B. Electric Are Presumptively Protected By The Second Amendment

*Heller* holds that once an item is established as an arm, it creates a rebuttal presumption that the arm receives Second Amendment protection: "*Heller* left no doubt that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.'" *Worman v. Healey*, 922 F.3d 26, 34 (1st Cir. 2019) (citation omitted). "In other words, it identifies a presumption in favor of Second

---

[4] The only other state that still bans electric arms is Hawaii. Currently, a bill before the Hawaii legislature seeks to repeal the ban and allow stun guns and Tasers subject to other regulation. *See* https://www.capitol.hawaii.gov/session2021/bills/HB891_HD2_PROPOSED_.HTM. (last accessed 3/3/2021).

Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). Thus, in *NYSRPA I*, the Second Circuit struck a ban on a pump-action rifle because the state focused exclusively on semiautomatic weapons and "the presumption that the Amendment applies remain[ed] unrebutted." 804 F.3d at 257. There is no dispute that electric arms at issue are bearable arms because they can be held by a person to attack another person or to defend the user from an attack. Thus, the burden is on the government to show that they are not usual protected arms. Defendants cannot rebut that presumption. This Court should find that electric arms are protected by the Second Amendment.

  **C. Electric Arms Are Commonly Owned for Lawful Purposes**

Even if the State attempts to rebut this presumption, this Court should maintain it because electric arms are protected by the Second Amendment. "[T]he pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes today." *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1032 (2016) (Alito, J., concurring). As a preliminary matter, electric arms are not "dangerous and unusual" weapons. In *United States v Henry*, the Ninth Circuit held machine guns are dangerous and unusual weapons. *United States v. Henry*, 688 F.3d 637, 640, 2012 U.S. App. LEXIS 16615, *6-7, 2012 WL 3217255. That opinion has been relied upon in this Circuit by Courts. *See* e.g. *United States v. Cruz-Olavarria*, 919 F.3d 661, 665 n.6 (1st Cir. 2019) ("The district court read aloud the following language from a Ninth Circuit case, *United States v. Henry*:[…]In short, machine guns are highly 'dangerous and unusual weapons' that are not 'typically possessed by law-abiding citizens for lawful purposes.'").

  Unlike machine guns, electric arms are less-than-lethal weapons that are designed to incapacitate but not kill an assailant. Thus, they are less dangerous than handguns which the *Heller*

5

court found to be the "quintessential self-defense weapon" and thus not dangerous and unusual. *See District of Columbia v. Heller,* 554 U.S. 570, 629, 128 S. Ct. 2783, 2818 (2008). *See also Caldwell v Moore*, 968 F.2d 595, 602 (6th Cir. 1992) ("It is not unreasonable for the jail officials to conclude that the use of a stun gun is less dangerous for all involved than a hand to hand confrontation"). The Defendants admit that Tasers and stun guns are less dangerous than handguns. *See* Exhibit "A", Response to Interrogatory No. 16.[5] Because they are less dangerous than protected handguns, these electric arms cannot be legally "dangerous and unusual". *See Caetano*, 136 S. Ct. at 1031 (Alito, J., concurring) ("As the per curiam opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is both dangerous and unusual").

Defendants were asked to "describe in detail how Tasers and/or stun guns [were] dangerous and unusual." Defendants objected but answered that Tasers are "dangerous insofar as they have the capacity to induce very strong muscle contracts in the body in a very short period of time" and that these contractions "can cause him/her to experience an adverse reaction" likening it to someone who is out of shape having an "adverse reaction to hard physical exercise." *See* Defendants' Response to Int. 12, Exhibit "A". Defendants apparently do not believe that stun guns are dangerous and unusual because their answer only references Tasers.

Furthermore, electric arms are in common use. "In his concurrence in *Caetano*, Justice Alito found that stun guns were in 'common use' because 'hundreds of thousands of Tasers and stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States.' 136 S. Ct. at 1032 (Alito, J., concurring) (citation and internal quotation marks omitted)." *Maloney v. Singas*, 351 F. Supp. 3d 222, 237 (E.D.N.Y. 2018). In *Maloney*, the Court found that

---

[5] Defendants produced Rhode Island State Police General Order 57I (Use of Conducted Electrical Weapons (CEW), Tasers), *See* Exhibit "B". The Rhode Island State Police consider Tasers as not a "substitute for lethal force" and the "same force option as the … expandable baton … and/or less-than-lethal munitions." *Id*. at p.2.

6

nun chucks where in common use where at least 64,890 metal and wood nun chucks had been sold to private citizens. *Maloney*, 351 F. Supp. 3d at 237-38. Here, the record demonstrates that there are approximately 6,446,972 stun guns sold to private citizens. *See* Declarations, Exhibit "C".[6]

Furthermore, Defendants cannot meet their burden simply by demonstrating that electric arms are not "in common use," but instead Defendants must show, at a minimum, that electric arms are "not typically possessed by law-abiding citizens for lawful purposes." *Maloney v. Singas*, 351 F. Supp. 3d 222, 227 (E.D.N.Y. 2018). Here, the Defendants produced twelve (12) documents which purport to be documents made after an arrest was effectuated. In these documents, two arrests were from 2005, two from 2006, one from 2007, two from 2009, one from 2012, three from 2014 and one from 2015. Here, the Defendants cannot demonstrate that typical usage of a stun gun is for unlawful purposes with only twelve arrests from 2005 to present. If Second Amendment protection for a weapon used in a few crimes could be eliminated, then *Heller* would have been decided the other way. "Handguns also appear to be a very popular weapon among criminals." *District of Columbia v. Heller*, 554 U.S. 570, 698 (Breyer Dissenting).

The courts to rule on this issue have agreed that electric arms receive Second Amendment protection. "Having received guidance from the Supreme Court in *Caetano II*, we now conclude that stun guns are 'arms' within the protection of the Second Amendment". *Ramirez v. Commonwealth*, 479 Mass. 331, 337, 94 N.E.3d 809, 815, 2018 Mass. LEXIS 237, *11, 2018 WL 1801917. *See also*, *People v. Yanna*, 297 Mich. App. 137, 145, 824 N.W.2d 241, 245, 2012 Mich. App. LEXIS 1269, *9-10, 2012 WL 2401400:

---

[6] These Declarations have been filed unredacted under seal [Docket No. 29] pursuant to the retailers' request due to the confidential business information contained therein. However, the Plaintiffs are filing redacted versions of the Declarations for the record.

> The prosecution also argues that stun guns and Tasers are so dangerous that they are not protected by the Second Amendment. However, it is difficult to see how this is so since *Heller* concluded that handguns are not sufficiently dangerous to be banned. Tasers and stun guns, while plainly dangerous, are substantially less dangerous than handguns. Therefore, tasers and stun guns do not constitute dangerous weapons for purposes of Second Amendment inquiries.

Thus, electric arms are not dangerous weapons because they are not capable of killing many people at one time like a machinegun and are much less dangerous than handguns which the Supreme Court has already found to not be a "sufficiently" dangerous weapon.

Judge David N. Hurd, of the Northern District of New York, recently held that New York's ban on electric arms "… is an unconstitutional restriction on the right to bear arms[]" and that "New York's sweeping prohibition on the possession and use of tasers and stun guns by all citizens for all purposes, even for self-defense in one's own home, must be declared unconstitutional in light of [*Heller*]." *Avitabile v. Beach*, 368 F. Supp. 3d 404, 421 (N.D.N.Y. 2019).[7]

Additionally, the Supreme Court of Illinois found a statute banning the carry of Tasers and stun guns unconstitutional because Illinois' provision on carriage of weapons sets forth a comprehensive ban that categorically prohibits possession and carriage "… of stun guns and tasers in public." *People v. Webb*, 2019 IL 122951, ¶ 20. And, because it is a categorical ban, "… that provision necessarily cannot stand." *Id*. at ¶ 21. The Illinois Supreme Court held that the portion of the statute prohibiting "… the carriage or possession of stun guns and tasers is facially unconstitutional under the second amendment." *Id*.

III.     This Court Should Find Rhode Island's Electric Ban Categorically Unconstitutional

This Circuit employs a two-step test to determine what level of scrutiny to apply to a Second Amendment challenge. Here, a court should look at 1) "if the challenged law burdens conduct that falls within the scope of the Second Amendment guarantee" and 2) if it does burden

---

[7] The State of New York did not appeal Judge Hurd's ruling.

Second Amendment conduct, the "court must determine what level of scrutiny is appropriate and must proceed to decide whether the challenged law survives that level of scrutiny." *Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018). "The *Heller* Court left no doubt that the right to bear arms 'for defense of self, family, and property' was 'most acute' inside the home." [citation omitted]. *Id.* at 670. "A law or policy that burdens conduct falling within the core of the Second Amendment requires a correspondingly strict level of scrutiny, whereas a law or policy that burdens conduct falling outside the core of the Second Amendment logically requires a less demanding level of scrutiny." *Id.* at 671. Here, because the ban at issue implicates possession in the home, this Court should strike Rhode Island's ban on the ownership of electric guns applying the categorical approach.

Many other Courts have either struck down bans on electric arms or presided over settlements where electric arm bans have been repealed.[8] Two Courts that issued written decisions on this issue struck bans without the need to look to tiered scrutiny. In *Ramirez v. Commonwealth* No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018), the Massachusetts Supreme Judicial Court stated as follows:

> Having received guidance from the Supreme Court ..., we now conclude that stun guns are "arms" within the protection of the Second Amendment. Therefore, under the Second Amendment, the possession of stun guns may be regulated, but not

---

[8] *See People v. Yanna*, 824 N.W.2d 241, 243 (Mich. Ct. App. 2012) (striking down a Michigan statute criminalizing possession of electronic weapons), *Second Amendment Society v. Porrino*, No. 3:16-cv-04906-DEA (D.N.J. Nov. 16, 2016) Doc. No. 30 (consent decree where the Court found New Jersey's complete ban on electric arms is unconstitutional), ("Pursuant to the holdings in *Heller, McDonald and Caetano*, N.J. Stat. Ann . § 2C:39- 3(h), to the extent this statute outright prohibits, under criminal penalty, individuals from possessing electronic arms, is declared unconstitutional in that it violates the Second Amendment to the United States Constitution and shall not be enforced"); *See, Crystal Wright v. District of Columbia*, No. 1:16-cv-01556-JEB (D.D.C. Sept. 26, 2016) Doc. No. 18 (stipulating to a stay of a motion for preliminary injunction pending new legislation and agreeing not to enforce ban against plaintiffs); *Ford v. City of New Orleans*, No. 2:16-cv16433-MVL-KWR (E.D. La. Dec. 14, 2016) Doc. Nos. 17, 19-20 (stipulating that the city will not enforce the ban against plaintiff and consenting to a stay of litigation pending enactment of legislation that decriminalized possession of stun guns); *Hulbert v. Pantelides*, No. 1:16-cv-04121-JFM (D. Md. March 3, 2017) Doc. No. 16 (letter from the City of Annapolis informing the court that the City Council passed an emergency ordinance eliminating all restrictions on ownership and possession of electronic weapons for personal defense); *Ramirez v. Commonwealth* No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018) (striking Mass. ban on stun guns).

> absolutely banned. Restrictions may be placed on the categories of persons who may possess them, licenses may be required for their possession, and those licensed to possess them may be barred from carrying them in sensitive places, such as schools and government buildings. But the absolute prohibition ... that bars all civilians from possessing or carrying stun guns, even in their home, is inconsistent with the Second Amendment and is therefore unconstitutional.

*Id* at 337-338.

And in *People v. Yanna*, 824 N.W.2d 241 (Mich. Ct. App. 2012) the Michigan Court of Appeals held that:

> [b]ecause tasers and stun guns do not fit any of the exceptions to the Second Amendment enumerated in *Heller*, we find that they are protected arms. *Heller* found unconstitutional a law which completely banned the possession of protected arms in the home. 554 U.S. at 628–629. We therefore hold that a complete ban on tasers and stun guns in the home violates the Second Amendment.

*See Yanna* at 246.

The Illinois Supreme Court similarly employed a categorical approach in striking a ban on the carry of electric arms. "Because we have concluded that section 24-1(a)(4) constitutes a categorical ban on those weapons, that provision necessarily cannot stand." *People v. Webb*, 2019 IL 122951, ¶ 21, 433 Ill. Dec. 54, 59, 131 N.E.3d 93, 98. But a New York district court applied intermediate scrutiny when it found New York's ban on electric arms unconstitutional. *See Avitabile v. Beach*, 368 F. Supp. 3d 404, 418 (N.D.N.Y. 2019).

In any event, this Court should apply a categorical approach in finding that a complete ban on a class of arms, i.e. electric arms, is unconstitutional. This was the approach taken in *District of Columbia v. Heller*, 554 U.S. 570 (2008) when confronted with a complete ban on handguns. Electric arms are also a class of arms. Pursuant to *Heller I*, "complete prohibition[s]" of Second Amendment rights are always invalid. *Id*. at 629. It is appropriate to strike down such "total ban[s]" without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right. *Id.* Per *Heller*, this Court could declare Rhode

10

Island's electric arm ban unconstitutional without the need to perform a scrutiny analysis. This is the approach that many other courts have taken in other contexts when dealings with severe restrictions on the Second Amendment.

The State Supreme Court of New Jersey also applied no scrutiny test in finding a conviction for possession of a machete in the home violated the litigant's Second Amendment right. *See State v. Montalvo*, 077331, 2017 WL 2471030 (N.J. June 8, 2017). In *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171 (D. Mass. 2014) and *Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015), the court found that a ban on firearms ownership based on decades old marijuana convictions was unconstitutional without the need to apply scrutiny.

The court in *Morris v. United States Army Corps of Eng'rs,* 60 F. Supp. 3d 1120 (D. Idaho 2014) found the U.S. Corps of Engineers' ban on firearms carry for self-defense was categorically invalid. The 7th circuit also invalidated Illinois' total ban on any carrying of firearms in public as categorically unconstitutional. *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012). The Illinois Supreme Court followed suit in *People v. Aguilar*, 2 N.E.3d 321, 327 (Ill. 2013) and found the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) of the Illinois aggravated unlawful use of weapons statute violated the Second Amendment without a scrutiny analysis. Same as to the District of Colombia's ban on handgun carry in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). And again, later regarding DC's licensing scheme put in place post-*Palmer* in *Wrenn v. District of Columbia*, 864 F.3d 650, 665 (D.C. Cir. 2017).

This Court should follow the lead of these Courts in finding that Rhode Island's complete ban on electric arms is unconstitutional without the need to look to tiered scrutiny. However, if a level of scrutiny is required, First Circuit precedent suggests that strict scrutiny should be applied.

    a. <u>Strict Scrutiny Should Apply</u>

Post-*Heller*, the First Circuit has developed a body of case law which supports the application of strict scrutiny where a law places a substantial burden on the core right to self-defense of a law-abiding person. "A law or policy that burdens conduct falling within the core of the Second Amendment requires a correspondingly strict level of scrutiny, whereas a law or policy that burdens conduct falling outside the core of the Second Amendment logically requires a less demanding level of scrutiny." *Gould v. Morgan*, 907 F.3d 659, 671 (1st Cir. 2018).

In this circuit the core right is "self-defense in the home". *Gould*, 907 F.3d at 671. Because this Court is faced with a complete ban on electric arm possession inside the home, where the right to self-defense is most acute, strict scrutiny should apply if the categorical approach does not. And if strict scrutiny applies, Rhode Island must demonstrate a compelling government interest to banning these arms that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest."). This is the approach that was taken by the court in *Bateman v. Perdue* 881 F.Supp.2d 709 (2012) in evaluating North Carolina's ban on carrying firearms during an emergency. A district court in Louisiana also applied strict scrutiny in striking a law banning firearms from the parking lot of any store that sells alcohol. *See Taylor v. City of Baton Rouge,* 39 F. Supp. 3d 807 (M.D. La. 2014). This Court should apply strict scrutiny as well because Rhode Island's electronic arms ban intrude upon Plaintiffs' Second Amendment rights by effectively banning them (and the public at large) from engaging in conduct that is at the very core of the Second Amendment.

In *Ezell*, the 7th circuit applied "not quite strict scrutiny" to Chicago's prohibition on live-fire training ranges—in part because Chicago required residents to undergo such training to obtain

a license to possess firearms at all. *Ezell v. City of Chicago*, 651 F.3d 684, 689 (7th Cir. 2011). A district court enjoined the City of Chicago's ban on guns stores using this approach in *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) And, in *Ezell v. City of Chicago* ("Ezell II"), 846 F.3d 888 (7th Cir. 2017), the 7th Circuit enjoined Chicago's zoning regulations at issue in that case which so "severely limit[ed] where shooting ranges may locate" that "no publicly accessible shooting range yet exist[ed] in Chicago." *Id*. at 894. As a result, the zoning regulations, "though not on their face an outright prohibition of gun ranges, nonetheless severely restrict the right of Chicagoans to train in firearm use at a range." *Id.*

Rhode Island has similarly curtailed Plaintiffs' Second Amendment rights. This Court should apply true strict scrutiny and find that Rhode Island does not have a compelling governmental interest in banning electric arms. And even if it does, a complete ban on electric arms is not narrowly tailored in achieving that goal. In the alternative, it should employ the *Ezell* approach and find Rhode Island has not demonstrated electric arm ownership presents such a risk to public safety that prohibiting electric arm ownership, even in the home, throughout the State is justified. However, Rhode Island's ban is so nonsensical that even if intermediate scrutiny applies this Court should rule in Plaintiffs' favor.

    b. <u>Under Intermediate Scrutiny Rhode Island's Electric Arm Ban is Unconstitutional</u>

Even if this Court finds intermediate scrutiny is appropriate to the instant case, Rhode Island's ban on electric arms cannot withstand constitutional muster. This Circuit's intermediate scrutiny test under the Second Amendment requires that "[t]here must be a fit between the asserted governmental interests and the means chosen by the legislature to advance those interests." *Gould v. Morgan*, 907 F.3d 659, 674 (1st Cir. 2018). It must be "a reasonable fit . . . such that the law does not burden more conduct than is reasonably necessary." *Id* (citation omitted). In *Worman*,

13

the 1st Circuit found that a ban on assault style rifles and high capacity magazine survived intermediate scrutiny because "the Act does not outlaw all semiautomatic firearms and magazines." *Worman v. Healey*, 922 F.3d 26, 40, 2019 U.S. App. LEXIS 12588, *29. Here, Rhode Island's ban on electric arms is a complete ban on the possession, carry, and use of electric arms. It burdens substantially more conduct than is necessary to further any governmental interest.

Even if intermediate scrutiny applies, Rhode Island's ban on electric arms still fails. Here, the State cannot have an important government interest in banning electric arms when handguns are allowed. While public safety is always a claimed government interest, the government cannot invoke public safety without a specific rationale. Here, the State would need to show a ban on electric arms would reduce violent crime and injury. It has not done so, and it cannot do so because electric arms are less deadly than handguns which are legal to possess. But even if the purpose was just to keep them out of the hands of criminals, then Rhode Island could ban criminals from having them instead of a flat-out ban on everyone, including the law-abiding. A tailored solution would serve to not punish the law-abiding citizen while at the same time insuring the often repeated "public safety" interest is satisfied.

In any event, for a law to be substantially related to a government interest, the government must demonstrate that the "restriction will in fact alleviate" its concerns. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001). The State cannot meet that burden by relying on "mere speculation or conjecture." *Id*. Instead, it must offer evidence demonstrating that the restriction it seeks to impose will in fact further its stated interests. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 437 (2002). The State cannot "get away with shoddy data or reasoning." *Id*. at 438. Here, the State fell well short of meeting its burden. *See, e.g.*, *Jackson*, 746 F.3d at 966 (whether the challenged restriction is "substantially related to the important government

14

interest of reducing firearm-related deaths and injuries").

While the State no doubt has an important interest in promoting public safety and preventing crime, that does not mean that the State necessarily has an important interest in banning an arm that is typically used for lawful purposes that is less deadly than the handguns at issue in *Heller* and *McDonald*. *See McDonald v. City of Chi.*, 561 U.S. 742, 783, 130 S. Ct. 3020 (2010) (rejecting the notion that governments may "enact any gun control law that they deem to be reasonable."). After all, "it would be hard to persuasively say that the government has an interest sufficiently weighty to justify a regulation that infringes constitutionally guaranteed Second Amendment rights if the Federal Government and the states have not traditionally imposed—and even now do not commonly impose—such a regulation." *Heller v. District of Columbia* (*Heller II*), 399 U.S. App. D.C. 314, 670 F.3d 1244, 1294 (2011) (Kavanaugh, J., dissenting).

Courts have applied similar reasoning in the Second Amendment context. For instance, in *Heller v. District of Columbia,* 801 F.3d 264, 280 (D.C. Cir. 2015) *(Heller III)*, the D.C. Circuit struck down the District of Columbia's prohibition on registering more than one pistol per month. The District defended that ban as designed to "promote public safety by limiting the number of guns in circulation," based on its theory "that more guns lead to more gun theft, more gun accidents, more gun suicides, and more gun crimes." *Id.* But the court rejected that simplistic syllogism, explaining that "taken to its logical conclusion, that reasoning would justify a total ban on firearms kept in the home," and so it simply cannot be right. *Id.*; *see also Grace v. District of Columbia,* 187 F. Supp. 3d 124, 148 (D.D.C. 2016) (reasoning that "it is not a permissible strategy to reduce the alleged negative effects of a constitutionally protected right by simply reducing the number of people exercising the right" (quotation marks omitted)). In other words, the government may not adopt a law with the design and direct effect of limiting the quantity of conduct protected

by the Second Amendment. And in *Maloney*, the Court struck New York's nun chuck ban applying intermediate scrutiny. "As previously discussed, Defendant has offered virtually no evidence supporting a public safety rationale for a total ban (as opposed to lesser restrictions) on the possession and use of nunchaku in New York State." *Maloney v. Singas*, 351 F. Supp. 3d 222, 239 (E.D.N.Y. 2018).

Here, the State does not present evidence that its ban on electric arms promotes public safety by banning electric arms in the home, because assuming a ban on carrying them outside the home is justified, it does not follow that it promotes *public* safety to ban them in the home. For the forgoing reasons, the State does not have an important government interest in banning the electric arms at issue.

    **D.**    **THERE IS NOT A REASONABLE FIT TO THE BAN AND PUBLIC SAFETY**

Assuming *arguendo* that electric arms are used by criminals, that does not mean that there is a reasonable fit between public safety and banning possession of electric arms for law abiding citizens even in the home. If that was all that was needed, then *Heller* would have been decided the other way. "Handguns also appear to be a very popular weapon among criminals." *District of Columbia v. Heller*, 554 U.S. 570, 698 (Breyer Dissenting). However, the *Heller* majority rejected the dissents' position that because criminals may misuse handguns that this was a sufficient rationale to ban handguns under any level of heightened scrutiny. The State could theoretically ban possession of electric arms by people with a criminal record or by minors. But instead, it bans possession by all citizens, including law-abiding citizens, such as the Plaintiffs in this case.

The State's rationale is even less strong than the one rejected by the *Heller* majority. In *Heller*, the Court was confronted with a ban on handguns which was "tailored to the urban crime problem in that it is local in scope and thus affects only a geographic area both limited in size and entirely urban; the law concerns handguns, which are specially linked to urban gun deaths and

16

injuries, and which are the overwhelmingly favorite weapon of armed criminals". *District of Columbia v. Heller*, 554 U.S. 570, 681-682, 128 S. Ct. (Breyer, J., dissenting). The Supreme Court rejected both the District of Colombia's arguments and the dissent's arguments and held that "a complete prohibition of [handgun] use is invalid". *District of Columbia v. Heller*, 554 U.S. 570, 629. The Supreme Court in *Heller* found "[i]t is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed." *Id.*

The State has not shown that its ban is "narrowly tailored to serve a significant governmental interest." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017) As the Supreme Court stated in the commercial speech case context, narrow tailoring requires "a fit between the legislature's ends and the means chosen to accomplish those ends". *Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1204 (9th Cir. 2013) (quoting *Bd. of Tr. of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989)). *State v. Herrmann*, 2015 WI App 97, 366 Wis. 2d 312, 873 N.W.2d 257 found a complete ban on switchblades failed intermediate scrutiny. ("Consequently, while banning possession of switchblades in other settings might be substantially related to the State's cited objective of protecting the public from surprise attacks, prohibiting individuals from possessing switchblades in their own homes for their own protection is not"). As in *Avitabile*, Rhode Island "has not introduced substantial evidence from which it could be reasonably inferred that complete bans on tasers and stun guns, even ones kept in the home of a law-abiding citizen like Avitabile, are 'substantially related' to the admittedly compelling interests in public safety and crime prevention." *Avitabile v. Beach*, 368 F. Supp. 3d 404, 421 (N.D.N.Y. 2019). Accordingly, Rhode Island law, as applied to electric arms "must be invalidated as unconstitutional". *Id.* The State has not demonstrated a valid

government public safety interest in banning electric arms, and even if there was one, a complete ban is not a reasonable fit to fulfill that interest.

IV. Conclusion

Post-*Heller, McDonald* and *Caetano,* Rhode Island's ban on electric arms is unconstitutional. It simply cannot be that the government cannot ban handguns without violating the Second Amendment, but it may ban an entire class of less-than-lethal arms. Removing Rhode Island's ban on electric arms will promote public safety because it will give Plaintiffs and other similarly situated persons an intermediate level of force that they can look to prior to using a firearm. There is no government interest in maintaining this ban.

For the foregoing reasons, the Court should enjoin Rhode Island's electric arm ban and declare the ban on the ownership and carry of electric arms unconstitutional and grant Plaintiffs' Motion for Summary Judgement.

Dated: March 8, 2021.

                                                              Respectfully submitted,
**MICHAEL P. O'NEIL and NICOLA GRASSO**
By and through their legal counsel,

*/s/ Frank R. Saccoccio (w/ permission)*
Frank R. Saccoccio, Esq. #5949
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island  02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

18

*\*Admitted Pro Hac Vice*

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*\*Admitted Pro Hac Vice*

### CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, counsel of record for Plaintiffs, hereby certify that the foregoing document or pleading has been filed with the Clerk of the United States District Court, District of Rhode Island, via ECF and that all counsel of record has received electronic notice of this filing.

Dated: March 8, 2021.

*/s/ Stephen D. Stamboulieh*
*Stephen D. Stamboulieh*